THE STATE OF VERMONT *v.* JOSIAH CHAMBERLIN.

*Criminal law.  Indictment.  Perjury.  Variance.*

In a prosecution for perjury, it is necessary that it should appear in the indictment that the oath was taken and the false swearing committed in a judicial proceeding.

In an indictment for perjury in an answer to a bill in chancery, it was alleged that the orator "exhibited his certain bill of complaint against the respondent, in the court of chancery, within and for the county of Orange, then being in session at Chelsea, in said county, which said bill was directed to the chancellor of the second judicial circuit;" the substance of so much of the statement and prayer of the bill was then set forth, as was necessary to explain the facts and materiality of the answer, and the indictment then continued, "as in and by said bill of complaint, of the the said A. B., remaining, filed of record, in the said court of chancery, amongst other things, will more fully appear;" and also stated that the respondent made oath to his answer to said bill, in due form before a justice of the peace, and set forth the particulars in which such answer was alleged to be false. *Held,* that this indictment sufficiently showed that the alleged offence was committed in a judicial proceeding; and that it was not necessary that the indictment should allege that the respondent was called upon in the bill to make answer under oath, or that the bill was served upon him.

State of Vermont *v*. Chamberlin.

The precedent for an indictment for perjury in an answer in chancery, given in 2 Chitty's Criminal Law, page 386, approved.

From the jurat of the answer, it appeared that it was sworn to in the county of Caledonia. *Held*, that it was competent to prove that, in fact, it was sworn to in the county of Orange.

In the trial of an indictment for perjury in an answer in chancery, all questions of variance between the allegations in the indictment and the answer itself, must be raised in the county court, and appear in the bill of exceptions, or they will not be considered by the supreme court.

A bill in chancery, brought to foreclose a mortgage executed solely by a married woman, alleged that her husband, who was a defendant in the case, was present at, and assented to the execution by her of the mortgage, and the borrowing by her of the money, to secure the payment of which the mortgage was given. The husband, in his answer, denied the statements of the bill in this respect. He was subsequently indicted for perjury in making this answer, and the indictment set forth the substance of the bill and answer. *Held*, that the false swearing, so charged, was material to the issue in the chancery case, and that it sufficiently appeared to be so in the indictment, without an express allegation of its materiality.

Where perjury is charged to have been committed in written documents, from the recital of which, in the indictment, it is evident that the perjury was material, an express allegation of its materiality may be omitted.

In the trial of an indictment for perjury, the government, by proving the falsity, in a material respect, of the respondent's statements under oath, in a judicial proceeding, make out a *prima facie* case of perjury. The burden of proof rests upon the respondent to show that the falsity of his testimony was occasioned by surprise, inadvertency or mistake, and did not proceed from a corrupt motive on his part.

INDICTMENT for perjury in an answer to a bill in chancery.

The indictment set forth that Moses Buchanan, 2d., on the 15th of January, 1856, exhibited his certain bill of complaint, in writing, against the respondent and others, naming them, in the court of chancery within and for the county of Orange, then being in session at Chelsea, which bill was directed to the chancellor of the second judicial circuit of the State of Vermont; that the said Buchanan in said bill of complaint, stated, among other things, that on the 20th of February, 1854, Mehitable B. Chamberlin, then wife of the respondent, executed to the complainant her promissory note of that date, for six hundred dollars, and payable in two years from date, with interest annually, and also a mortgage deed of certain lands in the

State of Vermont *v.* Chamberlin.

town of Newbury, to secure the payment of such note, which was given for the amount of money named therein, which was at that time borrowed by the said Mehitable of the said Buchanan, to pay as the purchase money of the land so mortgaged, which she had then recently purchased of Samuel Hutchins and Moses Buchanan; that the said Moses Buchanan, 2d., in said bill of complaint, further set forth that the respondent was present at, and cognizant of, and consenting to the execution and delivery of such note and mortgage by his wife to Moses Buchanan, 2d., and the borrowing of said sum of money by her of said Buchanan; that the respondent, on the 14th day of May, 1856, at Newbury, in Orange county, produced and exhibited to Elijah McLeran, Esq., a justice of the peace within and for the county of Orange, the answer, in writing, of the respondent to the said bill of complaint; that the respondent was then and there in due manner sworn, and did take his corporal oath touching and concerning the matters contained in the said answer, before the said McLeran, who had then and there sufficient and competent power and authority to administer an oath to the respondent in that behalf; that the respondent did upon his corporal oath, then and there before the said McLeran, as such justice of the peace, swear that so much of said answer as related to his own acts and deeds was true according to his best knowledge; that the respondent in said answer did falsely, knowingly, wickedly, wilfully, maliciously and corruptly, upon his oath aforesaid, answer, swear and affirm among other things, in substance as follows, that is to say, that he had no knowledge of the execution of the note and mortgage aforesaid by the said Mehitable, until after the same was executed and delivered by the said Mehitable to the said Buchanan as aforesaid, and that the respondent had no knowledge of the manner in which the money received upon said note was applied, or of any payment to the said Hutchins and Buchanan, until after the business had been completed; and that the respondent never did assent to, or acquiesce in such payment, or in the manner in which the business was done by the said Mehitable; but that on the contrary, the respondent was opposed to said arrangement, and, had he been consulted before it was made, would have prevented it; that the respondent in his said answer admitted that long prior to the 20th of February, 1854, he was aware that the said

Mehitable desired to purchase the premises described in said bill, from said Hutchins and Buchanan, and was at one time, as the respondent was informed, negotiating with one John Randall, and that said Randall and Mehitable at one time, went to Wells River to have a conveyance made of said premises by said Hutchins and Buchanan to said Randall, as security for the advance to be made by him for said purchase, and the said Randall finding the title offered, to be a mere quitclaim, absolutely refused to make any advance, and thus the negotiation ended; that the respondent heard no more of any intended purchase, until about the 20th of February, 1854, when the said Moses Buchanan, 2d., informed the defendant that he was going to see what could be done about it, and on the same day the said Buchanan, and said Randall and said Mehitable went to Wells River; that said Mehitable procured her passage of some neighbor without any consent or knowledge, at the time, of the respondent; that the respondent also went to Wells River on that day, but took no part in the business transacted, and had no knowledge of the arrangement made or to be made, and was not consulted about the particulars of the same at all; but that the respondent had always expressed himself as opposed to such an arrangement, both to his wife Mehitable and to said Randall, " *as by the said answer of him, the said Josiah Chamberlin, still remaining in the said court of chancery at Chelsea aforesaid, amongst other things, will more fully appear ;*" that in truth and fact, the respondent, at the time of making oath and swearing as aforesaid, well knew that he did have knowledge of, and did assent to and acquiesce in the execution by the said Mehitable of the said note and mortgage, and the delivery thereof by her to said Buchanan.

The respondent plead not guilty, and the cause was tried by jury, at the June Term, 1857,—UNDERWOOD, J., presiding.

The prosecuting attorney offered in evidence the original bill in chancery and the respondent's answer thereto, referred to in the indictment, to the admission of which the respondent objected, as not being admissible to support the charges in the indictment. The court admitted them in evidence, to which the respondent excepted.

The bill, in addition to that portion of it set forth in the indictment, stated that said Buchanan loaned said money to said Mehit-

State of Vermont *v.* Chamberlin.

able, solely relying upon the security of the real estate so mortgaged by her to him ; that after said loan the said Mehitable died, leaving several minor children, who, with the respondent, were made defendants to the bill; that said note had not been paid ; and prayed that the said defendants be decreed to pay to the orator the amount of said note, or in default thereof to be barred of, and from all equity of redemption in the premises.

The answer of the respondent to the bill in chancery was as set forth in the indictment, with the exception of a few variances, which are set forth at length in the brief of the learned counsel for the respondent, and also with the exception that the respondent in said answer claimed and insisted that the legal title to the land in question, at the time of the purchase of it by the said Mehitable, and the execution by her of said note and mortgage, was vested in the respondent's children, as legatees of one Mindwell Chamberlin.

The answer appeared, from the jurat upon it, to have been sworn to by the respondent in Caledonia County. The state's attorney proposed to show by Elijah McLeran, by whom the oath to the answer purported to have been administered, that he administered the oath to the respondent to said answer, at Newbury, in Orange County, at the time set forth in the indictment. To this evidence the respondent objected, but the court allowed the witness to testify, and he did testify according to the offer of the prosecuting attorney.

The government gave evidence tending to prove the falsity of the statements in the answer which were charged to be false in the indictment, and that the respondent knew of their falsity when he swore to the answer, and that the respondent therein wilfully, maliciously and corruptly swore falsely.

The respondent introduced evidence tending to show the contrary, and that the answer was brought to McLeran by Chamberlin and sworn to by him, in a hasty manner, the day before it was filed, and that it was not read to him when the oath was administered by McLeran, and there was no evidence whether it was ever read to him or not.

The respondent's counsel requested the court to charge the jury that the statements in the answer, sworn to by the respondent, and charged in the indictment, were immaterial to the issue made by

the bill and answer, and that although the jury should find they were not true when the respondent swore to them, and that he knew them not to be so, yet that the respondent was entitled to a verdict.

But the court refused so to charge, but charged the jury that the facts sworn to in the answer, and upon which the perjury was assigned in the indictment, were material to the issue made by the bill and answer, and that if they found that the statements therein sworn to by the respondent, as charged in the indictment, were false and untrue, and that the respondent at the same time knew them to be so, and that he swore to such statements corruptly and against his better knowledge, and with the design and view of carrying a decision in his favor in the chancery suit, by inducing the court of chancery to believe statements which he knew were not true, it would be their duty to convict the respondent.    They were further told, that the crime charged consisted in the *intent*; that if the respondent swore through misapprehension, or mistake of facts, or inadvertency, he was not guilty; that the presumption was, that the respondent, when he signed and swore to the answer, knew what it contained, and that the burden of proof was on him to show he did not know the contents, or misapprehended, or was mistaken about them; that to justify a verdict of guilty, the jury must find that he deliberately, knowingly, falsely and corruptly swore to the material facts, as charged, against his then better knowledge.

They were further told that it was incumbent on the government to prove the falsity of the facts as sworn to by the respondent, by testimony equivalent, at least, to that of *two credible unimpeached witnesses*; and that in order to convict the prisoner, a preponderance of evidence against him would not be sufficient, but that they must be convinced of his guilt beyond a reasonable doubt, and by a preponderance of evidence (over and above one credible witness to balance the defendant's oath), at least fully equal to that of one credible unimpeached witness.

The jury returned a verdict of guilty.    The respondent then filed a motion in arrest of judgment on account of the insufficiency of the indictment, which was overruled by the court, to which decision the respondent also excepted, as well as to the refusal of the court to charge as requested, and to the charge as given.

State of Vermont *v.* Chamberlin.

*C. B. Leslie* and *L. B. Peck,* for the respondent.

The statute provides " that if any person of whom an oath shall be required by law, shall wilfully swear falsely in regard to any matter or thing, respecting which such oath is required, such person shall be deemed guilty of perjury;" Comp. Stat. chap. 106, sec. 2.

1. The indictment is bad. It does not, in either count, charge or set forth, that the respondent was *lawfully called upon* to make answer under oath, or give testimony, to a bill of chancery or cause, *then pending,* to wit, at the time of making and swearing to the answer.

2. It contains no allegation that the bill in chancery had been served upon the respondent, or that he *had had any notice* that the same had been exhibited to the chancellor, or that the defendant had been in any way required by law, to answer to the same before said court.

3. Nor does the indictment, in either count, allege that there was any cause legally pending, in which the said defendant's answer was made, at the time it was made and sworn to.

The indictment must be certain to *every intent* and *without any intendment to the contrary*; Chitty's Crim. Law, vol. 1, page 172.

The indictment only charges that on the 15th day of January 1856, the orator exhibited his bill to the court of chancery. This is not sufficient. It might have been exhibited and never been entered in court, or if it had been entered in court, the defendant might not have been called upon, by service or notice, to make his appearance to answer to it, and if it ever had been *pending,* it might have been disposed of, and dismissed from the court long before the defendant's answer was sworn to, for aught that appears by the indictment.

The indictment nowhere contains an allegation that the defendant ever filed or procured the answer to be filed in said court, in answer to said bill, or any suit whatever ; Chitty's Crim. Law, vol. 2, page 312.

The indictment should have set forth, that the defendant's answer was made and *filed* to be used in a *cause then pending* before said court of chancery, and in which the defendant had been legally called upon to answer.

It must appear from the indictment, *distinctly,* that the answer

was given to be used in a *judicial proceeding then pending.* For aught that appears in the indictment, the false oath charged may have been *extra judicial*; *Regina* v. *Bishop*, 41 Eng. C. L. 169; *Regina* v. *Overton*, 45 Eng. C. L. 83; *Regina* v. *Pearson*, 34 Eng. C. L. 321.

The answer was not admissible in evidence, for the reason of variance.

Any variance between the defendant's answer as set out in the indictment and the original answer, which alters the sense, is fatal. The first and second counts set out that the defendant swore in his answer, "he had no knowledge of the execution of the note and mortgage given to the orator by the said Mehitable, until after the same *was* executed.

Whereas the answer contained the verb *were*, instead of was.

The indictment sets out that the defendant stated in his answer, "nor had this defendant any knowledge of the manner in which the money was applied, etc." Whereas the answer sets forth "nor had this defendant any knowledge of the manner in which the money '*received on said note*' was applied."

The indictment speaks of money generally, and the answer refers to, and identifies the money; therefore, there is a material difference between the matter set forth in the indictment and that sworn to in the answer.

Again, the indictment sets out that the defendant stated in his answer as follows: "on the contrary, the defendant was opposed to such arrangement, and, had he been consulted before it was made, would have prevented it, if in his power."

And the answer goes on and states the reason why he would have prevented it, as follows: "for the reason that the conveyance received by the said Mehitable from the said Hutchins was merely a quit claim, and this defendant then believed, and now does, that the legal title to that portion of the land formerly deeded by Samuel Boyce to this defendant, by deed dated 16th of August, 1837, was in the children of this defendant, as legatees of one Mindwell Chamberlin who succeeded to this defendant's title." All this is in the same paragraph in the defendant's answer, with that portion which is set out in the indictment, and yet it is left out. It explains and applies that which is set out in the indictment, to the subject

matter set forth in the whole paragraph, and by leaving it out, it is a material variance; 2 Stark Evi. 858–9, note *M*; 1 Chitty's Crim. Law 235.

The indictment does not set forth that the matter set forth, and alleged to be false, was material in the issue made by the bill and answer, and therefore, this is to be determined by what is set out. The bill charges that the defendant's wife borrowed, in her own name, of the orator, six hundred dollars; that she paid this same money to Hutchins and Buchanan, for, and as purchase money for certain premises, by them, on that day, deeded to the defendant's wife, and that the defendant's wife gave her note to the orator for said six hundred dollars, borrowed by her, and also a mortgage in her own name (not executed by the defendant at all), of the premises deeded to her by Hutchins and Buchanan, and that the defendant was present and acquiesced and consented to said transactions. The paper, purporting to be the defendant's answer, denies that he consented to, or acquiesced in the transactions done by his said wife, as charged in the bill.

The indictment goes upon the ground that the defendant committed perjury in denying that he consented to, and acquiesced in what his wife did. The indictment does not set forth that the defendant committed perjury upon the rest, and other parts of the answer.

The borrowing of the money, and giving her note and mortgage all in her own name, and not as the agent of the defendant, was not binding upon her. Nor was it binding upon the defendant, as it was not done in his name, nor for his benefit. The whole purports to have been, and really was, done on her own credit, and in her name solely, and she being at that time a married woman, and living with her husband, her acts and deed were void; Com. Stat. ch. 63, sec. 2; 7 Mass. 14; 27 Vt. 562.

The only ground upon which the orator could get relief, would be that the defendant's wife, having purchased the estate with the money had of him, she, in equity, would, while she lived, and after her decease, her representatives, hold the same in trust for him.

And it would not make the transaction any more legal or binding, whether the defendant was present and consented and acquiesced in his wife's acts or not, so long as it was not in fact, done in his name, for his benefit or as his agent.

State of Vermont *v.* Chamberlin.

The defendant, in his answer, does not claim to hold under his wife, or as her representative, but he claims that his children own, and did own at the time of the conveyance by Hutchins and Buchanan to his wife, the premises named in said deed and mortgage.

Therefore, whether the defendant consented to, and acquiesced in his wife's act and deed or not, is not material.

When a bill was filed for the specific performance of a contract, relating to the purchase of lands, and the defendant had relied on the statute of frauds (the agreement not being in writing), and also denied having entered into an agreement, and upon this denial he was indicted; but it was held that the denial of all agreement, not binding by the statute of frauds, was immaterial and irrelevant, and therefore not indictable; Chitty's Crim. Law. vol. 2, page 306.

The charge of the court on the question of *intent*, was wrong. It was the duty of the court to have pointed out the evidence given " *that the defendant brought the answer to McLeran and swore to it in a hasty manner, and that it was not read to the defendant, and that no evidence was given that it was ever read to him at all,*" and have instructed the jury that this was evidence to be by them considered, as tending to prove that the defendant swore to it through mistake or misapprehension of facts, or inadvertency, and as the court did not call the attention of the jury to this evidence, the charge on this point was, in effect, a virtual direction to return a verdict of guilty. The charge given was well calculated to mislead the jury on this point; 1 Aik. 367; 1 Aik. 116.

*C. C. Dewey*, State's Attorney, for the prosecution.

The opinion of the court was delivered by

BENNETT, J. This was an indictment for perjury, in making oath to an answer to a bill in chancery, and the case comes up upon a motion in arrest, and also upon exceptions, taken on the trial before the traverse jury.

Several objections have been taken to the sufficiency of the indictment, and the most formidable one is, that it does not sufficiently appear that the answer was sworn to in a *judicial proceeding*.

Though our statute has declared that it shall be sufficient in an

indictment for perjury, to set forth the substance of the offence charged, yet, I apprehend it is material that it should appear that the oath was had in a judicial proceeding, and that this is matter of substance. It was so held in *Rex* v. *Overton*, 43 Eng. Com. Law 87, in reference to the statute of 23 G. 2, and we apprehend our statute should not have a different construction in this particular.

The indictment alleges that Moses Buchanan did exhibit his certain bill of complaint, in writing, against Josiah Chamberlin, and others named, in the court of chancery within and for the County of Orange, then being in session, which said bill was directed to the chancellor of the 2d judicial circuit, and the pleader makes the following reference to the bill: " *as in and by said bill* of complaint of the said Moses Buchanan, *remaining, filed of record, in the said court of chancery, amongst other things will more fully appear.*"

I at first doubted whether it did sufficiently appear that the alleged perjury was committed in a judicial proceeding, but upon the examination of the precedent given in Chitty's Crim. Law (2d vol. 386) for an indictment for perjury in an answer sworn before a master in chancery, it appears that this indictment is strictly in accordance with that precedent. The allegation there, is, " did exhibit his certain English bill of complaint, etc., in the high court of chancery, etc.," and the bill is referred to the same as in the present indictment.

If that precedent is a good one in this particular, and sufficient to show that the alleged offence was committed in a judicial proceeding in England, we see no reason why it should not be sufficient here. Our court of chancery is declared by the statute to be always in session, except for the purpose of passing final decrees. It is said by Mr. Chitty in a note, that this precedent was settled by an eminent Crown lawyer, 'in 1805, upon an examination of precedents, and I am not aware that it has ever been questioned in England. Mr. Chitty himself is good authority for a precedent he may adopt, and it is said in the note, that the indictment against Wallis, in 1800, was in the same form.

For the case of *Regina* v. *Bishop*, 41 Eng. Com. Law 169, to which we have been referred, the indictment was for perjury, committed in a proceeding under their Interpleader act, and it was not

alleged that there had been an application for the obtaining of a rule according to the provisions of that act, without which it did not follow that the proceeding was of a judicial character, and because it was not alleged, that *a rule had been obtained,* and the indictment was held bad. That is not an authority against this indictment, and upon the whole, we think this indictment does sufficiently allege that the answer was made in a *judicial proceeding,* which is all that is necessary. The parties could not be at *issue* until after the answer had come in. The objection that it is not stated in the indictment, that the prisoner was called upon to make answer under oath, or that the bill of complaint had been served upon him, is without force. If the answer was made in a *judicial proceeding,* it is not to be taken that the oath was a *voluntary one.* It is not necessary that the indictment should allege, or show in what manner the prisoner had used the answer, or refer for that purpose to the files of the court. The guilt was complete as soon as the falsehood was sworn to and sanctioned by the prisoner's oath ; 7 Term 315 ; 2 Chitty's Crim. Law. Law, 312.

We see no possible objection to the admission of the evidence to show that the answer was in fact sworn to in this county, though upon the face of the magistrate's certificate, it appeared to have been sworn to in the County of Caledonia ; See *Rex* v. *Emden,* 9 East. 437 ; 2 Russell, 660.

No questions of variance are raised on this bill of exceptions. It is the duty of counsel to point out to the court the variances which they rely upon, that the court may know what questions they are called upon to decide.

It can not be expected that the court can, upon a jury trial, fish up matters of variance. That rule of practice is peculiarly important in a case of this kind, where a long bill and answer in chancery are offered in evidence.

It does not appear that the bill and answer were *objected* to, even on the general ground of variance in the county court, and we are not prepared to say that any of the special grounds of variance urged on this trial, could, upon the closest scrutiny, have availed the party, if objected to in due form. They, at least, seem to be of a most trivial character, and in no way affect the justice of the trial.

There can be no doubt that the particulars, in which the false-hood is assigned, were *material,* and their materiality sufficiently appears in the indictment. When the perjury is assigned on written documents, from the recital of which, as in this case, it is evident the perjury is material, the express allegation of its materiality may be omitted; 2 Chitty's Crim. Law, 307.

We see no objection to the charge of the court, and it seems to have been as favorable to the prisoner as the nature of the case would allow.

In regard to the instructions given the jury, relative to a *corrupt intention,* which has been made the ground of comment, there can be no objection. The government, by proving the falsity of the oath, *prima facie,* make a case of corrupt swearing to what was false. If it was occasioned by surprise, inadvertency, or by mistake, the proof should come from the respondent, as the Judge charged. It is to be taken, *prima facie,* that the prisoner understood what facts were stated in the answer; 2 Chitty's Crim. Law 312.

Judgment that the respondent take nothing by his exceptions, and sentence was passed upon the prisoner.